UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-23432-CIV-COHN-SELTZER

MOOTILAL RAMHIT & SONS
CONTRACTING, LTD., HUNZA
CONSTRUCTION CO. LTD.,
PREMCHAND RAMHIT,
ROOPCHAND RAMHIT, NANDA
RAMHIT, and SEAN GHOURALAL,

    Plaintiffs,

v.

FAROUK MOHAMMED and FIBERNET
ENGINEERING GROUP, INC.,

    Defendants.

_____/

## ORDER DISMISSING CASE WITHOUT PREJUDICE
## BASED ON FORUM NON CONVENIENS

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss [DE 22] and Defendants' Supplemental Brief on Motion to Dismiss [DE 45] (together, "Motion"), as well as the Conditional Withdrawal of Plaintiffs' Objections to Dismissal for Forum Non Conveniens [DE 76] ("Withdrawal"). The Court has carefully reviewed the Motion and Withdrawal, along with all related filings, and is otherwise fully advised in the premises.[1]

**I.    Background**

Plaintiffs are two construction companies and their principals, all from the nation of Trinidad and Tobago. See DE 1 at 3 (Compl.). Defendant Farouk Mohammed, a native of Trinidad and Tobago, resides in Florida and is the president of Florida-based

---

[1] Defendants have also filed three motions to exclude testimony from Plaintiffs' expert witnesses. See DE 67–69. Because the Court finds that the case should be dismissed based on forum non conveniens, these motions will be denied as moot.

Defendant Fibernet Engineering Group, Inc. ("Fibernet").  See id. at 3-4.  Fibernet "purports to engage in the business of providing networking services of voice and data communication, supervision, support, and professional design and consulting services." Id. at 4.

In this action, Plaintiffs allege that Defendants defrauded them of several million dollars through an elaborate confidence scheme, summarized as follows:

> Defendant FAROUK MOHAMMED . . . falsely represent[ed] himself as a representative of AT&T and a United States government official and then convinc[ed] Plaintiffs to build telecommunications data centers in Trinidad and the Netherlands, with promises that AT&T would then lease the facilities.  In order to build and equip these data centers, Defendant lied to Plaintiffs, persuading them that they could only purchase millions of dollars of necessary equipment and machinery from him, as the representative of AT&T.  Each and every representation was false, but FAROUK MOHAMMED used his cultural and ethnic affinity with Plaintiffs to create an aura of credibility. After fleecing the Plaintiffs of millions of dollars, FAROUK MOHAMMED told them that this had been his "easiest project," that he was under the protection of the United States government and could do whatever he wanted, that he could have the Trinidadian Plaintiffs arrested, and he threatened them with bodily harm.
>
> FAROUK MOHAMMED perpetrated this complex scheme by using several key elements.  First, he manipulated his shared cultural and national affinity as a Trinidadian native and shared ethnic identity as East Indians to encourage Plaintiffs to trust him.  Second, FAROUK MOHAMMED used a variety of associates to create the aura of legitimacy by fooling Plaintiffs into believing they were employees of AT&T or legitimate businessmen.  Third, FAROUK MOHAMMED used the company FIBERNET ENGINEERING GROUP, INC., in which he was an officer, to create the impression of an authorized ongoing business transaction.  Fourth, FAROUK MOHAMMED used his wife and daughter, as officers of the company, to reinforce the illusion of its legitimacy.  Fifth, FAROUK MOHAMMED represented himself as a representative of the United States government, engaging in a secret mission to support vital communications in Latin America and the Caribbean.

2

Id. at 2-3. Each Plaintiff asserts claims against Defendants for fraud, conspiracy to defraud, fraudulent misrepresentation, breach of fiduciary duty, constructive trust, alter ego, and breach of fitness for a particular purpose. See id. at 48-77.

In their original Motion to Dismiss, Defendants argued that Plaintiffs' action was barred by Florida's four-year statutes of limitations for fraud claims and for contract claims not based on a written agreement. See DE 22; Fla. Stat. § 95.11(3)(j), (k); Fla. Stat. § 95.031(1), (2)(a).[2] Plaintiffs responded that they had pleaded sufficient facts to avoid dismissal on limitations grounds. See DE 23. The parties' contentions focused largely on whether the facts underlying Plaintiffs' fraud-related claims "were discovered or should have been discovered with the exercise of due diligence" more than four years before Plaintiffs filed this case. Fla. Stat. § 95.031(2)(a).

After reviewing the Motion to Dismiss and Response, the Court issued an Order directing supplemental briefing. See DE 36. "Although the parties assume in their motion papers that the substantive law of Florida applies to this action," the Court observed, "many of the events alleged by Plaintiffs occurred in, or were otherwise related to, Trinidad and Tobago." Id. at 2. The Court thus determined that the case "presents a substantial choice-of-law issue, which will affect the Court's analysis of Defendants' Motion." Id. Accordingly, the Court directed the parties to file supplemental briefs addressing the following issues:

1. Based on the application of Florida's choice-of-law rules, and with regard to each of Plaintiffs' claims, is this action governed by the substantive law of Florida or the law of Trinidad and Tobago?

---

[2] Defendants also referenced the heightened pleading standards for fraud claims, see Fed. R. Civ. P. 9(b), but made no specific argument that Plaintiffs' Complaint failed to meet those standards.

      2.      If the law of Trinidad and Tobago applies to some or all of Plaintiffs' claims, how does that affect (a) the viability of those claims as pleaded in the Complaint and (b) the issues raised by Defendants' Motion to Dismiss?

      3.      Do the circumstances of this case, including the possible application of the law of Trinidad and Tobago, warrant dismissal without prejudice based on the doctrine of forum non conveniens?

Id. at 3 (citations omitted).

In their supplemental brief, Defendants asserted that Florida's choice-of-law rules required the Court to apply the law of Trinidad and Tobago to Plaintiffs' claims, that the law of that country would allow the parties to pursue their existing claims and defenses, and that this action should be dismissed without prejudice due to forum non conveniens, allowing Plaintiffs to proceed with the case in Trinidad and Tobago. See DE 45.  Plaintiffs, by contrast, maintained that Florida law would govern the action, that applying the law of Trinidad and Tobago would undermine Plaintiffs' claims, and that forum non conveniens dismissal was not warranted.  See DE 47.  Both sides also filed other written materials in support of their arguments.  See DE 46; DE 47-1–47-4.

More recently, Plaintiffs filed their Withdrawal, in which they "conditionally withdraw any objection to the dismissal of this action, without prejudice, for forum non conveniens."  DE 76 at 1.  Plaintiffs list the following conditions for their Withdrawal:

      a.      Defendants shall submit to the jurisdiction of the Trinidadian courts with respect to any action refiled in that jurisdiction.

      b.      Defendants shall not assert any statute of limitations or laches defense, except to the limited extent that such defenses existed on the date of filing this action, which is September 23, 2013.

      c.      In the event that the Trinidadian court does not exercise jurisdiction over this action filed in that jurisdiction, or Defendants take any position contrary to the conditions listed above in Paragraphs 4(a)-(b), Plaintiffs may refile the case in the United States without any prejudice whatsoever.

> d.  Each party shall bear its own attorneys' fees and costs arising from the substantive respects of this action.

Id. at 3. Defendants do not object to the first three conditions, but they oppose the fourth one. See id. at 5 ("Defendants do not agree that each party should bear its own fees and costs.").

For the reasons detailed below—including the choice-of-law issues briefed by the parties—the Court concludes that Trinidad and Tobago is a more appropriate forum for this action and therefore that the case should be dismissed on the ground of forum non conveniens. This dismissal will incorporate the first three conditions of Plaintiffs' Withdrawal, but the Court will defer any ruling on fees and costs until an appropriate motion is filed. In addition, because of the forum non conveniens dismissal, the Court declines to address the limitations arguments raised in Defendants' Motion.

## II.  Discussion

### A.  Forum Non Conveniens Standards

The doctrine of forum non conveniens allows a federal court to dismiss an action if a foreign court is a more appropriate and convenient forum for adjudicating the case. See Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 425 (2007). To obtain dismissal based on forum non conveniens, the moving parties must "establish that '(1) an adequate alternate forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting Leon v. Million Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001)). The plaintiffs' choice of forum is "entitled to deference, and there is a presumption in favor of" that choice, especially when "the plaintiffs are citizens of the

5

United States." Wilson v. Island Seas Invs. Ltd., 590 F.3d 1264, 1269 (11th Cir. 2009). But when, as here, the plaintiffs are foreign citizens, their forum selection creates "a weaker presumption that receives less deference." King v. Cessna Aircraft Co., 562 F.3d 1374, 1382 (11th Cir. 2009) (per curiam); see Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1312 n.15 (11th Cir. 2002) (noting that "the bias towards the plaintiff's choice of forum is much less pronounced when the plaintiff is not an American resident or citizen").

### B. Analysis of Defendants' Motion

#### 1. Adequate and Available Alternate Forum

In evaluating Defendants' request for dismissal based on forum non conveniens, the Court first must consider (1) whether the alternate forum of Trinidad and Tobago is adequate and (2) whether that forum is available. See Tazoe, 631 F.3d at 1330. An alternate forum is inadequate "only in rare circumstances where the remedy offered by the other forum is clearly unsatisfactory." Aldana v. Del Monte Fresh Produce N.A., 578 F.3d 1283, 1290 (11th Cir. 2009) (internal quotation marks omitted). Such a remedy is insufficient when it is "no remedy at all." Piper Aircraft Co., 454 U.S. at 254; see Aldana, 578 F.3d at 1290. An alternate forum is available if the foreign court can assert jurisdiction over the litigation. See Leon, 251 F.3d at 1311. Generally, this requirement is met "when the defendant is 'amenable to process' in the other jurisdiction." Piper Aircraft Co., 454 U.S. at 254 n.22 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947)).

Here, the parties do not dispute that Trinidad and Tobago is an adequate forum for Plaintiffs' claims. Nor does the Court have any reason to doubt that the courts of that nation would offer Plaintiffs an adequate remedy. Defendants have filed an

affidavit from a Trinidad and Tobago lawyer, who avers that the country is a "common law jurisdiction with a reliable and impartial judicial system." DE 46 at 2 (Aff. of Jonathan Walker). The attorney further explains that every claim alleged in Plaintiffs' Complaint can be brought in Trinidad and Tobago. See id. at 3-7. And, as in Florida, a four-year limitations period would apply to those claims, subject to a "discovery rule" for fraud claims. See id. at 7-8.[3] Having reviewed this affidavit and the underlying law, the Court concludes that the adequate-forum requirement is met. See Pandeosingh v. Am. Med. Response, Inc., No. 09–CV–5143 (FB), 2012 WL 511815, at *3 (E.D.N.Y. Feb. 15, 2012) (holding that Trinidad and Tobago was an "adequate alternative forum" for personal-injury case); see also Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC, 534 F. App'x 826, 830 (11th Cir. 2013) (per curiam) (affirming district court's finding that Dominican Republic was adequate forum for breach-of-contract action, based on attorney affidavits similar to one filed here).

Trinidad and Tobago is also an available forum. Defendants' affiant states that courts of that nation will exercise jurisdiction over tort, contract, and constructive-trust claims against non-resident defendants when the alleged wrongful conduct occurred in the country. See DE 46 at 8-9; DE 46-5 at 4-6. And he is "not aware of any obstacle to the Plaintiffs commencing an action in Trinidad and Tobago against the Defendants."

---

[3] The one exception is Plaintiffs' constructive-trust claims. As under Florida law, those claims have no limitations period but are instead subject to the equitable defense of laches. See id.

Plaintiffs argue that in Florida, a five-year statute of limitations applies to their contract-related claims because they are "based on a written instrument"—namely, invoices that Defendants sent to Plaintiffs. DE 47 at 16-17; see Fla. Stat. § 95.11(2)(b) (five-year statute of limitations for contract claims "founded on a written instrument"). The Court finds this argument unpersuasive, though, since nothing indicates that the parties ever executed a specific written agreement covering the transactions at issue.

7

Id. at 9.  More, Defendants have agreed to "submit to the jurisdiction of Trinidad's court's for purposes of the instant litigation."  DE 45 at 10; see Grp. CG Builders & Contractors, 534 F. App'x at 830 (holding that defendants' stipulation to submit to jurisdiction of Dominican Republic was "sufficient to make the forum available").[4]  To ensure that Defendants are amenable to process in Trinidad and Tobago, however, the Court will retain jurisdiction over this action in the event that Defendants refuse to proceed voluntarily in that forum.  If the courts of Trinidad and Tobago decline to hear Plaintiffs' claims because Defendants do not consent to jurisdiction there, or if those courts find jurisdiction lacking for any other reason, then Plaintiffs may move to reopen this case.  See Del Istmo Assurance Corp. v. Platon, No. 11-61599-CIV, 2011 WL 5508641, at *9-*10 (S.D. Fla. Nov. 9, 2011) (Cohn, J.) (adopting similar procedure).

## 2. Private and Public Factors

The Court next must determine whether private and public factors weigh in favor of dismissal.  See Tazoe, 631 F.3d at 1330.  This "comparative inquiry" requires the Court to "weigh the relative advantages and disadvantages of each prospective forum."  Id. at 1331 (internal quotation marks omitted).  Private factors involve "the interests of the participants in the litigation," while public factors concern "the relative interests of the two fora."  Id. at 1331, 1333.

Relevant private factors include "the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining

---

[4] Defendants have further agreed not to raise any limitations defenses other than the one they have already asserted in this forum.  See DE 45 at 8.  In particular, Defendants will not argue that the time between dismissal of the action in this District and Plaintiffs' refiling of the case in Trinidad and Tobago should be counted against the four-year limitations period.  See id.

attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" Piper Aircraft Co., 454 U.S. at 241 n.6 (quoting Gulf Oil Corp., 330 U.S. at 508).  A court should "look at the private interests first and then, if the balance of the private interests are found to be in equipoise or near equipoise, it will determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum." Wilson, 590 F.3d at 1270 (internal quotation marks & emphasis omitted).  Even if the private factors support dismissal, the court should proceed to analyze the public factors.  See Leon, 251 F.3d at 1311 (noting that "even though the private factors are generally considered more important than the public factors, the better rule is to consider both factors in all cases" (internal quotation marks omitted)). Those factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Piper Aircraft Co., 454 U.S. at 241 n.6 (quoting Gulf Oil Corp., 330 U.S. at 509).

      a.      **Private Factors**

"Perhaps the most important 'private interest' of the litigants is access to evidence." Ford v. Brown, 319 F.3d 1302, 1308 (11th Cir. 2003).  When considering the availability of evidence and witnesses, the Court must "must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action."

Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988).  Plaintiffs' claims here focus on an alleged fraudulent scheme in which Defendant Mohammed posed as an employee of AT&T and a federal agent, convinced Plaintiffs to buy equipment from Defendants and build telecommunications data centers in Trinidad and Tobago, and falsely assured Plaintiffs that AT&T would lease those facilities.[5]  The main defense that Defendants have raised thus far is that Plaintiffs' action is time-barred because they knew or should have known about Defendants' claimed misconduct outside the limitations period.

The record indicates that most of the documentary evidence relevant to these claims and defenses is already in Plaintiffs' possession.  See also DE 45 at 26-27 (Pls.' Initial Disclosures); DE 26 at 2 (Defs.' R. Initial Disclosures).[6]  So this evidence would be available regardless of the trial forum.

The cost of having witnesses voluntarily appear at trial, as well as the availability of process to compel the attendance of unwilling witnesses, both favor trying the case in Trinidad and Tobago.  Of the twenty-two witnesses listed in the parties' initial disclosures (all but one identified by Plaintiffs), it appears that twelve witnesses reside in Trinidad and Tobago, six are located in Florida, one lives in Canada, and three have unknown whereabouts.  See DE 45 at 22-26; DE 26 at 1.  Too, Plaintiffs' witness disclosures include Defendant Mohammed but specifically exclude the four individual Plaintiffs, all of whom reside in Trinidad and Tobago.

---

[5] Plaintiffs also contend that Defendants similarly convinced Plaintiffs to build a data center in the Netherlands.  Neither side argues, however, that the Netherlands is the appropriate forum for this action.

[6] Plaintiffs filed a motion seeking to impose discovery sanctions against Defendants for failure to produce various documents.  See DE 53.  But the later briefing on that motion reflects that Defendants have produced substantially all of the requested documents.  See DE 60; DE 61.

Plaintiffs argue that they have "committed to voluntarily producing any of the witnesses [they intend] to call, at Plaintiffs' expense." DE 47 at 21. Plaintiffs also note that "the depositions of approximately twelve potential Plaintiffs' non-party Trinidadian witnesses have videotaped and transcribed." Id.[7] Yet even accepting these facts, that the bulk of the witnesses reside in Trinidad and Tobago makes that country a superior forum for this action. Some of the foreign witnesses were victims of the alleged fraud, making them more likely to appear in this District voluntarily. But other witnesses, such as those who were allegedly complicit in Defendants' scheme, have no obvious interest in traveling here to testify, and it is unlikely they could be compelled to do so. The courts of Trinidad and Tobago, in contrast, could compel the witnesses to testify at trial. See DE 46 at 2 (explaining that "the Trinidad and Tobago Courts have the power to make an order compelling a witness to attend Court to give evidence"). Further, Plaintiffs' disclosures show that the non-party witnesses were directly involved with the events that occurred in Trinidad and Tobago. The lack of clear access to this important testimony supports dismissal. Cf. McLane v. Marriott Int'l, Inc., 960 F. Supp. 2d 1351, 1360 (S.D. Fla. 2013) (holding that private factors "strongly weigh in favor of dismissal because the most critical witnesses concerning liability cannot be compelled to testify in this Court"), aff'd, 547 F. App'x 950 (11th Cir. 2013) (per curiam).

The trier of fact may also need to view the data centers and equipment located in Trinidad and Tobago. Because those facilities and equipment are central to Plaintiffs' claims, it is quite possible that viewing them might assist the fact-finder. See Platon, 2011 WL 5508641, at *6 (explaining that the need to view a property development was

---

[7] It is unclear whether the deposed witnesses are the same ones listed in Plaintiffs' initial disclosures.

11

"not outside the realm of possibility given that this litigation involves a development project," and "such view would necessarily take place in Panama").  This factor, therefore, likewise favors of dismissal.

In sum, the Court is mindful that at least some presumption exists in favor of Plaintiffs' chosen forum.  See Wilson, 590 F.3d at 1269; King, 562 F.3d at 1382.  But on balance, the relevant private factors show that Trinidad and Tobago is a more appropriate and convenient forum for this action, and those factors outweigh Plaintiffs' selection of a United States forum.  See Piper Aircraft Co., 454 U.S. at 255 n.23.

### b. Public Factors

With regard to the public factors, the Court finds that Trinidad and Tobago has a greater local interest in adjudicating this case than does the United States.  See id. at 241 n.6 (noting "the 'local interest in having localized controversies decided at home'" (quoting Gulf Oil Corp., 330 U.S. at 509)).  The United States does have some interest in addressing alleged fraud by a United States resident using his domestic business.  Nonetheless, Trinidad and Tobago has a more compelling interest in providing redress to its citizens and businesses that were allegedly defrauded in that country.  See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1104 (11th Cir. 2004) ("[I]t is clear that a sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil.").

Also supporting dismissal are "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" and "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law."  Piper Aircraft Co., 454 U.S. at 241 n.6.  A federal court sitting in diversity must apply the choice-of-law rules of the forum state—here, Florida.  See Trumpet Vine Invs., N.V. v.

12

Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  For tort claims, Florida uses the "most significant relationship" test set forth in Restatement (Second) of Conflict of Laws § 145.  See Trumpet Vine Invs., 92 F.3d at 1115-16.[8]  That test generally requires a court to consider (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145(2) (1971).

Further, § 148 of the Restatement describes the proper choice-of-law analysis for fraud and misrepresentation claims:

> (2)  When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
>     (a)  the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
>     (b)  the place where the plaintiff received the representations,
>
>     (c)  the place where the defendant made the representations,
>
>     (d)  the domicil, residence, nationality, place of incorporation and place of business of the parties,

---

[8] Plaintiffs note that their "tort-based claims" are those alleging fraud, conspiracy to defraud, fraudulent misrepresentation, breach of fiduciary duty, constructive trust, and alter ego.  See DE 47 at 12 n.3.  The "contract-based claims" are those asserting breach of fitness for a particular purpose.  See id. at 12 n.2.

13

> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Id. § 148(2); see Trumpet Vine Invs., 92 F.3d at 1118. As this Court has recognized, the factors identified in § 145 and § 148 "overlap substantially" and therefore may be considered together. Berry v. Budget Rent a Car Sys., Inc., 497 F. Supp. 2d 1361, 1365 (S.D. Fla. 2007).

With respect to contract claims, Florida applies the *lex loci contractus* rule. See Trumpet Vine Invs., 92 F.3d at 1119. Under that rule, "issues concerning the validity and substantive obligations of contracts are governed by the law of the place where the contract is made." Id. "A contract is made where the last act necessary to complete the contract is performed." Id. Similarly, issues regarding performance of a contract are governed by the law of the place where the contract is to be performed. See Hammett v. Am. Bankers Ins. Co. of Fla., 203 F.R.D. 690, 700 (S.D. Fla. 2001).

Here, the choice-of-law analysis for Plaintiffs' tort and contract claims is fairly involved. Plaintiffs emphasize that some of the meetings between the parties—especially near the start of their relationship—occurred in Florida, where Defendants reside. It was there, Plaintiffs claim, that Mohammed and his associates first posed as legitimate businessmen, showed Plaintiffs certain technical facilities, and induced Plaintiffs to participate in the alleged scheme. Defendants also received various payments from Plaintiffs in Florida.

Later, though, many of the parties' meetings occurred in Trinidad and Tobago, where Plaintiffs reside and where Mohammed allegedly persuaded them to invest ever-

14

increasing amounts of money into the data centers.  More, it was in Trinidad and Tobago where Plaintiffs received the equipment they bought from Defendants and where Plaintiffs built the data centers that Defendants purportedly agreed to lease. These facts show that the parties' relationship was centered in Trindad and Tobago.

Based on a close review of the record, the Court finds that Trinidad and Tobago has a more significant relationship to Plaintiffs' tort claims than does the United States. Similarly, the Court concludes that Trinidad and Tobago is the place where the relevant contract was to be performed.  Plaintiffs' breach-of-warranty claims assert that the equipment Plaintiffs bought from Defendants was not suitable for its intended purpose. The last act in performing that alleged contract was the delivery of the equipment to Trinidad and Tobago.

For these reasons, the law of Trinidad and Tobago will likely apply to all of Plaintiffs' claims.  Although that law is based on English common law, and thus not entirely unfamiliar, requiring the Court and the jury to apply this foreign law counsels in favor of dismissal.  See Piper Aircraft Co., 454 U.S. at 241 n.6; see also Tazoe, 631 F.3d at 1334 ("The need to apply foreign law in these cases also favors dismissal."); see also Goldstein v. Hard Rock Cafe Int'l (USA), Inc., 519 F. App'x 653, 655 (11th Cir. 2013) (per curiam) ("A Florida district court likely is not 'at home' with Dominican law, nor would a jury be familiar with applying this foreign law.").  Even if Florida law did apply to some issues here, the need to conduct this choice-of-law analysis in the first place shows that dismissal is warranted.  See Piper Aircraft Co., 454 U.S. at 241 n.6.

The remaining public factors do not weight significantly for or against dismissal.[9]

---

[9] While the parties briefly discuss court congestion in the Trinidad and Tobago versus this District, the Court believes that either forum could adjudicate Plaintiffs'

15

On balance, therefore, the Court finds that the public factors also support dismissing this action based on forum non conveniens.

### 3. Undue Inconvenience or Prejudice

Finally, the Court must assess whether Plaintiffs can reinstate their suit in Trinidad and Tobago without undue inconvenience or prejudice. See Tazoe, 631 F.3d at 1330. As already discussed, Defendants are willing to proceed with this litigation in Trinidad and Tobago, and the Court will condition its dismissal on Defendants' consent to jurisdiction in that forum. See supra Part II.B.1. Defendants have also agreed not to raise any limitations defense other than the one they have already asserted. See DE 45 at 8. And Plaintiffs offer no other persuasive reason why litigating this action in Trinidad and Tobago would cause them undue inconvenience or prejudice, especially since that nation offers an adequate remedy for their claims. See supra Part II.B.1.

### C. Attorney's Fees and Costs

The parties apparently dispute whether Defendants may recover attorney's fees and costs based upon the forum non conveniens dismissal. See DE 76 at 4-5. At this time, the Court will not decide whether, or to what extent, Defendants may be entitled to an award of fees and costs. If Defendants wish to seek fees and costs, they may serve and file an appropriate motion. See S.D. Fla. L.R. 7.3.

### III. Conclusion

As detailed above, Defendants have established all of the requirements for dismissal based on forum non conveniens. See Tazoe, 631 F.3d at 1330. Despite the deference afforded to Plaintiffs' choice of forum, see King, 562 F.3d at 1382, the

---

claims within a reasonable time. See Piper Aircraft Co., 454 U.S. at 241 n.6. And because the United States does have some relationship to this case, it would not be unfair to burden local citizens with jury service. See id.

Court's examination of the relevant factors shows that trying the case in this District, rather than in Trinidad and Tobago, would be unnecessarily burdensome to the parties and the Court.  See Piper Aircraft Co., 454 U.S. at 255 n.23.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. To the extent Defendants seek dismissal based on forum non conveniens in their Supplemental Brief on Motion to Dismiss [DE 45], Defendants' Motion to Dismiss [DE 22] is **GRANTED**;

2. The above-styled action is **DISMISSED WITHOUT PREJUDICE**;

3. Defendants' Motion to Strike and/or Exclude Plaintiffs' Expert Manny Ayala [DE 67], Defendants' Motion to Strike and/or Exclude Plaintiffs' Expert Ruben J. Nieves [DE 68], and Defendants' Motion to Strike and/or Exclude Plaintiffs' Expert Jan Willem Rotteveel [DE 69] are **DENIED AS MOOT**;

4. The Clerk of Court shall **CLOSE** this case and **DENY AS MOOT** all other pending motions;

5. If Plaintiffs attempt to refile their claims in Trinidad and Tobago, but the courts of that nation decline to exercise jurisdiction over the case, Plaintiffs may move to reopen this action; and

6. The Court retains jurisdiction to consider any motions for attorney's fees or costs. The parties shall serve and file such motions in accordance with Local Rule 7.3 and shall confer as required by that rule.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 15th day of July, 2014.

_____
JAMES I. COHN
United States District Judge

17

Copies provided to:

Counsel of record via CM/ECF